JUAN MENDOZA, Petitioner and Appellee, *v.* BOARD OF COMMISSIONERS OF SAN JUAN, ETC., Respondent and Appellant.

No. 6422. Argued May 29, 1934.—Decided July 11, 1934.

*J. Valldejuli Rodríguez* for appellant. *M. A. Martínez Dávila* for appellee.

Mʀ. Cʜɪᴇꜰ Jᴜꜱᴛɪᴄᴇ Dᴇʟ Toʀo delivered the opinion of the Court.

Juan Mendoza, a resident of the Capital, engaged in selling meat from slaughter-houses in Guaynabo and in other towns of the island, brought this certiorari proceeding in the district court against the Board of Commissioners of San Juan, praying for the annulment of a certain ordinance approved by it on January 4, 1933. The board defended, and the case was finally submitted to the court. It was decided for petitioner by judgment of April 29, 1933.

The board took an appeal. The transcript was filed June 28, 1933. The appellant moved for several extensions of time and finally filed its brief on February 17, 1934. On May 29, last, the appeal was heard, and the case was submitted for our consideration and decision.

It seems advisable to copy in its entirety the ordinance the annulment of which is sought. It reads:

"Oʀᴅɪɴᴀɴᴄᴇ No. 118.—To provide for the inspection of fresh meat introduced or sold in the Capital, from cattle slaughtered outside the territorial limits of the same; directing the appointment of inspectors for that purpose; determining inspection fees; providing for the punishment of violations to this ordinance, and for other purposes.

"Be it ordained by the Board of Commissioners of San Juan:

"Section 1.—The introduction or sale of fresh meat from cattle slaughtered outside the territorial limits of the Capital of Puerto Rico is hereby prohibited, if said meat, before being offered for sale, is not inspected or approved by the Director of Health and Charity of the Capital or by his agents in the manner and form which shall be provided, and if the person introducing or selling it has not paid

the corresponding inspection fees; *Provided,* That the refrigerated meat, imported from the United States, is excepted from the above provisions inasmuch as it is subject to the sanitary inspection of the Public Health service of the Government of the United States, as is also excepted the fresh meat of animals slaughtered within the limits of the Government of the Capital inasmuch as it is subject to an adequate inspection and the slaughter-houses are inspected and regulated by the officers of the Government of the Capital.

"Section 2.—Any person introducing for consumption or sale in the Capital of Puerto Rico fresh meat from animals slaughtered outside the limits of the Government of the Capital will obtain a license issued by the Department of Health and Charity of the Capital, will comply with all the conditions which said Department shall require by regulation, and will prepay to the Treasurer of the Capital the sum of twenty cents ($0.20) for each twenty-five (25) pounds of meat, as an inspection fee.

"Section 3.—Any person who shall introduce within the territorial limits of the Government of the Capital, who shall offer for sale, or permit to be offered for sale, or any person who sells, offers or keeps for sale fresh meat not previously inspected and approved by the Director of Health and Charity of the Capital or by his agents or representatives, in the manner herein provided, is punishable by fine not exceeding $50 or by imprisonment in jail not exceeding 15 days, or by both, such fine and imprisonment at the discretion of the court.

"Section 4.—The Director of Health and Charity, in cooperation with the City Manager and with the Treasurer is empowered to delegate the inspection provided by this ordinance in the persons in charge of the San Juan, Puerta de Tierra and Santurce market places, as also in the commissaries of the Capital, employees of the Treasury Department and of the Administrative Board of the Capital, until the Board of Commissioners directs the appointment of personnel for that purpose.

"Section 5.—This ordinance shall take effect 20 days after it shall be approved and published as provided by law, and it repeals all resolutions, acts and ordinances or parts therefor in conflict herewith, especially Ordinance No. 58, approved by the Board of Commissioners on May 5, 1932."

The grounds for the annulment prayed for were:

(1) Violation of Section 2 of the Organic Act by establishing a difference between the meat introduced into San

Juan from the Island and that coming from San Juan itself or from the United States.

(2) Violation of the same legal provision because the free trade and sale of fresh meat in San Juan is impaired by levying a tax upon the meat coming from the Island and not upon that coming from other places.

(3) The impost of twenty cents on each 25 pounds of meat introduced into San Juan from the Island is oppresive, unjust and unreasonable, since the importers are bound to pay another excise tax to the municipalities where the cattle is slaughtered and a license fee for the use of the meat shops;

(4) It is not uniform, since it provides that persons selling meat from the Island in violation of the ordinance are punishable by fine not exceeding $50 or by imprisonment in jail not exceeding 15 days, and imposes no such penalty to the sellers of meat from cattle slaughtered in San Juan or imported from the United States who do not comply with the inspection and payment of inspection fees as therein provided;

(5) It precludes the sellers of meat from the Island from carrying on said business in conditions equal to those of sellers of meat from other places; and

(6) The Government of the Capital is not empowered under its constitutional law to impose the inspection fee provided by the ordinance.

We shall begin our study by the last ground of the appeal, marked with number 6.

The inhabitants of the Capital were constituted into a body politic and juridic by an act of May 15, 1931, session laws of 1931, page 626, with legislative powers within its territorial limits extending to all matters of a local nature connected

". . . with its government, revenues and appropriations, collections and disbursements, loans, public works, public education, public charities and health, order, public safety and cleaning, police, jails, the beautifying of the city, streets, parks, plazas, structures, markets,

slaughter-houses, cemeteries, sewers, docks, commerce, industries, transportation, waterworks, public lighting, and all sorts of public services and activities in benefit of the Capital, and for the development, progress and welfare thereof;''

Said powers are exercised by a governmental body known as ''Board of Commissioners of San Juan'' which is empowered to levy reasonable taxes and excises.

The revenue of the Capital comes from several sources. One of those sources is, as specifically provided by Section 40 of the Act,

''(h) The proceeds of such excises and imposts as the Board of Commissioners may approve, among which the following shall figure: . . . . . . . . . . (9) On the slaughter of cattle in public or private slaughter-houses. Such excise or impost shall not exceed thirty (30) cents on each twenty-five (25) pounds of pork and beef, and fifty (50) cents on each hog, goat, or sheep; (10) And such other reasonable excise or imposts as the Board of Commissioners may determine.''

Thus, the legislative powers of the Capital embrace public health in general, and markets and slaughter-houses in particular, extending to the levying of excises and imposts on the slaughter of cattle in public or private slaughter-houses.

This is not the case of an impost or tax on the slaughter of cattle. According to the ordinance the charge is for ''the sum of twenty cents on each twenty-five pounds of meat, as an *excise* or *inspection fee,*'' for the imposition of which the Capital has in principle, in our opinion, full powers. If it must look over public health, its market places and slaughter-houses are under its direction, and if it must incur expenses to inspect the cattle slaughtered in those slaughter-houses and the meat sold in said market places in order to insure public health, it is clear that it can recover those expenses by imposing and collecting an inspection fee.

This point seems clear to us. However, the question to be considered is whether or not the impost constitutes an inspection fee or if it is in reality an excise tax on the selling

of meat, and be it an inspection fee or an excise tax, if it is uniform. This leads us to the study and decision of the five other reasons alleged for the annulment of the ordinance.

We copied the ordinance in its entirety on purpose. From a reading of all its clauses it is noticeable that the underlying idea of it was not the imposition of a reasonable inspection fee but the levying of a real excise tax on the meat introduced from the island to be sold in San Juan in competition with the meat from cattle slaughtered in San Juan. And that impression is strengthened by an examination of the arguments advanced in the appellants brief in favor of the ordinance. Evidently, its purpose was not to insure public health through a real and efficient inspection service, but to protect the interests of the sellers of meat from cattle slaughtered in San Juan.

But whether it be an inspection fee or an excise tax, we think that its lack of uniformity is evident. He who introduces meat from other municipalities for sale in San Juan, does it under the general insular sanitary laws and under the ordinances of the municipality of origin, and besides, he must get a license to sell in San Juan and he must pay the fees required for the right to use the meat shop in the market place. Those fees are uniform, and they seem sufficient to counterbalance the expenses of the inspection that the government of the city should make for the safety of its inhabitants. But the inspection fee or tax that the ordinance exclusively imposes on the meat introduced in San Juan from the Island, excluding from its effects the meat from cattle slaughtered in San Juan itself and the meat introduced in San Juan from the continent, is unequal and violates the provisions of Section 2 of the Organic Act, to wit: "That the rule of taxation in Puerto Rico shall be uniform." See the cases of *Suazo* v. *Lugo*, 42 P.R.R. 56, *Lugo* v. *Suazo* 59 F. (2d) 386, and *Nazario* v. *Domenech*, 43 P.R.R. 760.

The judgment appealed from must be affirmed.